UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20804-SINGHAL(s)

UNITED STATES OF AMERICA

v.

HANAH CHAN,

    Defendant.
_____/

## FACTUAL PROFFER

The United States of America and the Defendant, Hanah Chan (the "Defendant" or "CHAN"), through counsel, hereby stipulate and agree that had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

Beginning in or around 2012, and continuing through in or around November 2019, in the Southern District of Florida and elsewhere, the Defendant, did knowingly and willfully, combine, conspire, confederate, and agree with other persons, including William D. FOSTER, a/k/a "William Cortes," a/k/a "William Cortez," a/k/a "Frank Herman Cruz," a/k/a "Frank Cruz," and Ashleigh HOLLOWAY, to use various personal and business accounts to structure deposits derived from illicit proceeds obtained through the operation of a commercial sex enterprise under FOSTER's leadership, in such a way as to evade the transaction-reporting requirements.

It was the object and purpose of the conspiracy for CHAN and her co-conspirators to deposit and to assist in the depositing of large sums of cash into accounts at domestic financial institutions by dividing the large sums into smaller deposits below the reporting threshold to avoid filing required reports that would raise suspicion or draw the attention of the financial institution, law enforcement, or other authorities to the cash deposits. CHAN knew that the most of the funds that were being structured were the proceeds of unlawful activity, *i.e.*, commercial sex. CHAN also

knew that the deposits were being structured into amounts lower than $10,000 to avoid triggering the currency-transaction reporting requirements that might have alerted the bank or law enforcement to the conspiracy's activities. CHAN knew the unlawful purpose of the plan and willfully joined it. During the conspiracy, one of the coconspirators knowingly engaged in at least one overt act as described in the Superseding Information. The overt act was committed on or about the time alleged with the purpose of carrying out and accomplishing the object of the conspiracy.

CHAN's primary role within FOSTER's organization was to manage the finances and the businesses in such a way as to carry on and promote FOSTER's commercial sex enterprise at FOSTER's direction. Furthermore, CHAN, operating at FOSTER's direction, was in charge of managing the travel arrangements and transportation for females to other states in order to engage in commercial sex.

FOSTER, CHAN, and HOLLOWAY worked together to recruit females, either themselves or through other individuals, to live with and work for FOSTER at exotic dance venues and to engage in commercial sex. These females were told by FOSTER, CHAN, and HOLLOWAY, among others, that the money that they made working at the exotic dance venues and engaging in commercial sex would be put toward investments that would benefit the females and provide for their early retirement. These representations ultimately led many females to engage in commercial sex. The females would then turn over their earnings each night at FOSTER's direction to either FOSTER, CHAN, HOLLOWAY, or another female selected by FOSTER to be in charge of the earnings. The females, including CHAN, were not able to retain the earnings that they made from dancing and commercial sex. On average, between 2012 and 2019, between five (5) and fifteen (15) females lived with, and worked for FOSTER. These females worked at least an eight-hour shift, approximately six days a week, every week of the year.

The representations made by FOSTER to these females were false. Ultimately, the females that worked for FOSTER's organization were not provided with their earnings, a benefit from any investments that were made with their earnings, or a retirement fund, apart from basic living expenses. Any money spent on basic living expenses required FOSTER's express permission. When these females attempted to leave FOSTER, they were threatened with psychological and financial harm. CHAN further acknowledges at least one occasion where FOSTER used violence against Victim 6 when she did not comply with his orders or rules. Ultimately, when females were able to leave FOSTER, they left with little to none of their earnings from engaging in commercial sex.

Furthermore, beginning at least as early as 2014, at FOSTER's direction, CHAN booked flights and arranged travel for females working for FOSTER to various locations in the United States, including to and from Florida, Michigan, and Nevada, where the females would engage in commercial sex and provide their earnings to CHAN, FOSTER, HOLLOWAY, or another female who was designated by FOSTER to be in charge of the earnings. Ultimately, the earnings from commercial sex would be deposited into accounts controlled by FOSTER.

With respect to VICTIM 3 and another female identified as VICTIM 6, at FOSTER's direction, on or about September 3, 2019, CHAN booked VICTIM 3 and VICTIM 6 a Delta Airways flight from Fort Lauderdale, Florida, to Detroit, Michigan. CHAN booked the travel because FOSTER told CHAN that the females would make more money in Detroit from dancing and prostitution since people were leaving Florida due to Hurricane Dorian. During the course of the conspiracy, CHAN booked flights and arranged travel to Detroit and other destinations on behalf of the females in FOSTER's organization knowing that the females would make money from engaging in commercial sex at these other locations and provide their earnings for FOSTER's benefit. On or

3

about September 4, 2019, VICTIM 3 and VICTIM 6 flew from Fort Lauderdale-Hollywood International Airport in Broward County, Florida, to Detroit, Michigan, at FOSTER's direction, for the purpose of engaging in commercial sex.

At the direction of FOSTER, CHAN would use and assisted others in using her own personal bank accounts, the bank accounts of other persons, and business accounts to deposit these illicit proceeds from the commercial sex enterprise in such a way as to conceal or disguise the nature, location, source, ownership, and control of the proceeds, *i.e.*, that the deposits were the proceeds of commercial sex, and were controlled by CHAN's ultimate boss—FOSTER. These accounts included, but were not limited to, the following accounts:

| Business Accounts | Bank Account Information |
|---|---|
| Live LLC | J.P. Morgan Chase Account Ending in 3969 |
| Taboo Retail LLC | J.P. Morgan Chase Account Ending in 0700 |
| Ocean House Entertainment | Bank of America Account Ending in 3086 |
| Ocean House Entertainment | Regions Account Ending in 3704 |
| ZAWYOU LLC | Bank of America Account Ending in 7839 |
| MTN Doo Logistics | Bank of America Account Ending in 9622 |

| Personal Accounts | Bank Account Information |
|---|---|
| William D. Foster | J.P. Morgan Chase Account Ending in 1528 |
| William D. Foster | J.P. Morgan Chase Account Ending in 2505 |
| William D. Foster | Regions Account Ending in 9981 |
| Hanah Chan | Bank of America Account Ending in 2640 |
| Hanah Chan | Regions Account Ending in 3956 |
| Hanah Chan & Ashleigh Holloway | TD Bank Account Ending in 9380 |
| VICTIM 6 | J.P. Morgan Chase Account Ending in 7981 |
| Ashleigh Holloway | J.P. Morgan Chase Account Ending in 3597 |

These accounts received hundreds of thousands of dollars in proceeds from commercial sex.

Furthermore, at FOSTER's direction, CHAN made cash deposits or assisted in the making of cash deposits at offices of the below-listed domestic financial institutions located in Miami-Dade,

4

Broward, and Palm Beach Counties, among other locations, in such a way as to avoid the transaction reporting requirements, specifically, the requirement that domestic financial institutions and banks must file currency-transaction reports with the Government listing all deposits, withdrawals, transfers, or payments involving more than $10,000 in cash or currency.

Some of the structured deposits made during the course of the conspiracy include:

| Approx. Date of Deposit | Nature of Transaction | Amount |
|---|---|---|
| 5/19/2016 | Cash Deposit into CHAN's Bank of America Account Ending in 2640 | $5,000 |
| 5/19/2016 | Cash Deposit into Ocean House Entertainment's Bank of America Account Ending in 3086 | $5,000 |
| 5/19/2016 | Cash Deposit into ZAWYOU's Bank of America Account Ending in 7839 | $3,600 |
| 5/19/2016 | Cash Deposit into ZAWYOU's Bank of America Account Ending in 7839 | $1,400 |
| 5/19/2016 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $4,850 |
| 5/19/2016 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $150 |
| 5/19/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $5,000 |
| 5/19/2016 | Cash Deposit into HOLLOWAY'S J.P. Morgan Chase Account Ending in 3597 | $4,500 |
| 5/19/2016 | Cash Deposit into VICTIM 6's J.P. Morgan Chase Account Ending in 7981 | $5,000 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $3,900 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,600 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,500 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,500 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,400 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $680 |
| 5/20/2016 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $420 |

| | | |
|---|---|---|
| 11/15/2016 | Cash Deposit into CHAN's Bank of America Account Ending in 2640 | $3,750 |
| 11/15/2016 | Cash Deposit into Ocean House Entertainment's Bank of America Account Ending in 3086 | $5,900 |
| 11/15/2016 | Cash Deposit into Taboo Retail's J.P. Morgan Chase Account Ending in 0700 | $1,100 |
| | | |
| 6/4/2017 | Cash Deposit into CHAN's Bank of America Account ending in 2640 | $5,000 |
| 6/4/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $3,000 |
| 6/4/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $2,000 |
| 6/5/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $9,800 |
| 6/5/2017 | Cash Deposit into Taboo Retail LLC's J.P. Morgan Chase Account ending in 0700 | $6,750 |
| | | |
| 7/22/2019 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,600 |
| 7/22/2019 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $2,400 |
| 7/22/2019 | Cash Deposit into CHAN's Regions Account Ending in 3956 | $5,000 |
| 7/22/2019 | Cash Deposit into FOSTER's Regions Account Ending in 9981 | $5,000 |
| 7/22/2019 | Cash Deposit into CHAN and HOLLOWAY's TD Account Ending in 9380 | $4,100 |
| | | |
| 8/8/2019 | Cash Deposit into FOSTER's J.P. Morgan Chase Account Ending in 2505 | $5,000 |
| 8/8/2019 | Cash Deposit into HOLLOWAY's J.P. Morgan Chase Account Ending in 3597 | $5,000 |
| 8/8/2019 | Cash Deposit into VICTIM 6's J.P. Morgan Chase Account Ending in 7981 | $5,000 |
| 8/8/2019 | Cash Deposit into Ocean House Entertainment's Regions Account ending in 3704 | $5,000 |
| 8/8/2019 | Cash Deposit into CHAN's Regions Account ending in 3956 | $5,000 |
| 8/8/2019 | Cash Deposit into FOSTER's Regions Account ending in 9981 | $5,000 |
| 8/8/2019 | Cash Deposit into CHAN and HOLLOWAY's TD Account ending in 9380 | $5,000 |

The amount of the deposits that were structured during the course of this conspiracy were at

6

least between $550,000 and $1,500,000. Furthermore, at least $100,000 in structured deposits were made within a twelve-month period. These deposits were then transferred, withdrawn, converted, and used by FOSTER, CHAN, and HOLLOWAY, among others, to make various transfers and purchases.

CHAN acknowledges that the financial transactions in which she and her co-conspirators engaged involved more than one domestic financial institution operating in interstate commerce.

The parties agree that these facts, which do not include all facts known to them, are sufficient to prove beyond a reasonable doubt the Defendant's guilt with respect to Count 1 and Count 2 of the Superseding Information.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 12/16/2020     By: _____ for
J. MACKENZIE DUANE
ASSISTANT UNITED STATES ATTORNEY

Date: 12/16/2020     By: _____
JESSICA KAHN OBENAUF
ASSISTANT UNITED STATES ATTORNEY

Date: 12/15/20     By: _____
TARA KAWASS
ATTORNEY FOR DEFENDANT

Date: 11/16/2020     By: _____
HANAH CHAN
DEFENDANT

7